DONNA R. ZIEGLER [142415]
County Counsel
By JILL P. SAZAMA [214215]
Deputy County Counsel
Jill.sazama@acgov.org
Office of the County Counsel, County of Alameda
1221 Oak Street, Suite 450
Oakland, California 94612
Telephone: (510) 272-6700

Attorneys for Defendants GREGORY J. AHERN
and RICHARD ROBERT UJDUR

UNITED STATES DISTRICT COURT

NORTHEN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSE ALEXANDER,<br><br>　　　　　Plaintiff<br>vs.<br><br>SHERIFF GREGORY AHERN & DEPUTY RICHARD ROBERT UJDUR III,<br><br>　　　　　Defendants. | Case:  22-cv-02548 DMR<br><br>**DEFENDANTS' SEPARATE CASE MANAGEMENT STATEMENT**<br><br>**DATE:  August 3, 2022**<br>**TIME: 1:30 p.m.**<br>**Oakland Courthouse**<br>**Courtroom 4 – 3rd Floor** |

Defendants SHERIFF GREGORY AHERN and DEPUTY RICHARD UJDUR ("Defendants") hereby submit this Separate Case Management Statement, after attempting, unsuccessfully, to schedule a Rule 26(f) meet and confer conference with plaintiff JESSE ALEXANDER ("Plaintiff"). On July 13, 2022, counsel for Defendants emailed Plaintiff requesting that the parties have a Rule 26(f) conference. Counsel asked for a telephone number at which Plaintiff could be reached for that purpose. Plaintiff responded on the morning of July 26, 2022, apologizing for his delay in responding, and suggesting preparing an administrative motion to reschedule the conference. Defense counsel responded later that morning, within two hours, asking what grounds there were for a continuance, requesting that they meet and confer then, and inquiring as to how much of a continuance Plaintiff wanted. As of this filing, defense counsel has not received any response to this email.

1. **JURISDITION AND SERVICE**

Defendant Sheriff Gregory Ahern was served on or about June 28, 2022, and defendant Deputy Ujdur subsequent thereto has consented to voluntarily appear in this case.

2. **FACTS**

<u>Facts not presently in dispute:</u>

Unknown.

<u>Defendants' factual contentions:</u>

On September 19, 2021, Mr. Alexander was detained in Housing Unit 9 at Santa Rita Jail in Dublin, California, a jail operated by the Alameda County Sheriff's Office. Defendant Ujdur, a deputy with 15 years' of experience, was working as a Deputy Sheriff in that housing unit. At approximately 6:20 p.m., Deputy Ujdur was supervising pill distribution when he discovered that Mr. Alexander had left his arm out of the open/unlocked cuffing port in his cell door. The events at issue were captured on body-worn camera video.

Mr. Alexander was verbally asked, several times, to remove his arm from the cuffing port and he refused. He furthermore responded by placing both arms through the cuffing port. Leaving the cuffing port open for other than legitimate penological reasons can present a safety and security risk to inmates and jail staff.

Because verbal commands and de-escalation techniques had failed, Deputy Ujdur and Deputy Martin attempted, through the use of wrist control techniques, to physically gain Mr. Alexander's compliance in removing his arms from the cuffing port. Throughout this time, Mr. Alexander was resisting the deputies' efforts, and loudly taunting and berating them for their actions. Unfortunately, the result of these efforts was, although one of Mr. Alexander's arms was removed from the cuffing port, he managed to free that arm, and wrap it around his cell door (which the deputies had opened to try to assist them in their task) and grab his other arm. Mr. Alexander continued to yell, and verbally mocked the deputies for their failed efforts to remove him from the cuffing port.

The deputies thereafter remained calm and totally withdrew all physical contact with Mr. Alexander. Instead they stood around him, attempting once more to persuade him verbally to stop, cuff up and re-enter his cell. Mr. Alexander refused, continued to sit on the floor with his arms wrapped

around the outside of his cell door, bantering with, taunting, and then yelling at the deputies. Deputy Ujdur summoned additional assistance, while Mr. Alexander continued to try to engage the deputies present verbally. In response to the deputies' failure to engage, Mr. Alexander began yelling things such as, "let's play!" and, "you don't want to play no more?"

Mr. Alexander then suddenly unwound his arms from the door, stood up, slammed his cell door closed, and assumed a bladed stance, and screamed loudly at the deputies. He balled his hands into fists and seemed prepared to attack the deputies.

Because Mr. Alexander took this sudden aggressive stance, and continued to yell and taunt the deputies, the deputies became concerned that Mr. Alexander may attack them physically. Deputy Martin calmly withdrew his taser and aimed it at Mr. Alexander, ordering him to lay down and place his hands behind his back. Mr. Alexander then kneeled down on one knee and yelled "Is this what you came her for?!" over and over. He then suddenly and inexplicably removed his clothes (he had been wearing jail issued pants and underwear) and screamed at the deputies, asking them if this was "what they want," to "embarrass him." Mr. Alexander was asked to put his clothes back on and get on the ground. Mr. Alexander complied, and laid down on the ground, but continued to raise his head and verbally taunt the deputies.

Two deputies approached Mr. Alexander and put him in handcuffs, then assisted him to a standing position and began escorting him down the hallway toward the stairs in his pod. Each deputy was holding onto one of Mr. Alexander's upper arms. As the trio were starting down the stairs, followed by other deputies, Alexander further resisted the deputies by attempting to entangle his foot behind a stair step. His actions caused him to trip slightly on the stairs, and descend somewhat onto them, but the deputies who were holding his arms held him up partway, and prevented him from falling all the way down onto the stairs. Mr. Alexander's foot was removed from the stairs, and the two deputies holding up Mr. Alexander continued escorting Mr. Alexander down the stairs and out of the pod.

Mr. Alexander was taken to a temporary holding cell, where his handcuffs were removed without incident. Mr. Alexander was then seen by a nurse. He had no injuries or complaints of pain.

## 3. LEGAL ISSUES

a. <u>Plaintiff's Legal Contentions</u>

Plaintiff sues Defendants asserting the above incident constituted excessive force in violation of his constitutional rights pursuant to 42 U.S.C. section 1983.

b. <u>Defendants' Legal Contentions</u>

Defendant Ujdur denies using excessive force or otherwise violating Mr. Alexander's constitutional rights. Defendant Ahern, who is sued in both his official and individual capacity, also denies violating Mr. Alexander's constitutional rights, and denies any other constitutional liability related to the above incident.

## 4. AMENDMENT OF PLEADINGS

Defendants request that a deadline of **October 1, 2022,** be set as the last day to amend the pleadings.

## 5. MOTIONS

Defendants intend to file a motion for summary judgment.

## 6. EVIDENCE PRESERVATION

Defendants are preserving relevant evidence.

## 7. DISCLOSURES

No Rule 26 conference has been held as of yet, nor have any initial disclosures been made by either party.

## 8. DISCOVERY

<u>Rule 26(f)(3) Discovery Plan:</u>

(A) <u>*Disclosures*</u>: Defendants will make initial disclosures by the initial case management conference.

(B) *Discovery Issues/Timing:*

1) Defendants will seek relevant discovery regarding whether Mr. Alexander suffered any injuries arising out of the incident alleged above, including his jail medical records.

2) Defendants may seek written discovery from Mr. Alexander, if necessary, regarding his claims.

3) Defendants may take the deposition of Mr. Alexander, if necessary, regarding his claims.

ESTIMATED TIME NEEDED: Defendants request a fact discovery cut-off of six months after the deadline to amend the pleadings.

(C) *Changes to Discovery Limitations*: None.

**9. CLASS ACTION**

N/A

**10. RELATED CASES**

N/A

**11. RELIEF**

Defendants request Mr. Alexander take nothing by way of his complaint.

**12. SETTLEMENT AND ADR**

Defendants believe that settlement discussions are unlikely to be fruitful until after any dispositive motion has been resolved.

**13. CONSENT TO MAGRISTRATE JUDGE FOR ALL PURPOSES**

Defendants consent to a Magistrate Judge.

**14. SCHEDULING**

    a. **Trial Date**: Defendants request a trial date in October 2023, or later.

    b. **Amendment of Pleadings/Addition of Parties:** Defendants request October 1, 2022.

    c. **Fact Discovery Cut-Off**: Defendants request a deadline of six months after the deadline to amend the pleadings.

    d. **Dispositive Motions filed by**: Defendants request a deadline of three weeks after the discovery cut-off date, for hearing 35 days later.

    e. **Expert Disclosure**: Defendants do not currently believe that this case will involve experts, but should that assessment change, they propose expert disclosure 60 days before trial, with rebuttal expert disclosure 3 weeks after initial expert disclosure.

    f. **Expert discovery cut-off**: 15 days before trial.

//

//

**15. TRIAL**

Defendants believe, if a trial is necessary, that it would take between 2 and 3 days, and propose a trial date in October 2023, or later.

**16. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Defendants are two individuals and (since Sheriff Ahern is sued in an "official" capacity) a public entity. They are self-insured, and have nothing to disclose.

**17. PROFESSIONAL CONDUCT**

Defendants have read and understand the Guidelines for Professional Conduct for the Northern District of California.

DATE:  July 27, 2022                    Respectfully Submitted,

DONNA R. ZIEGLER
County Counsel in an for the
County of Alameda, State of California


By:  /s/ Jill P. Sazama, Esq.
    JILL P. SAZAMA
    Deputy County Counsel

    Attorneys for Defendants RICHARD UJDUR and
    SHERIFF GREGORY J. AHERN